UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID SCHER,<br><br>Plaintiff,<br><br>v.<br><br>SUFFOLK UNIVERSITY,<br><br>Defendant. | ) | Civil No. 25-13406-LTS |

MEMORANDUM AND ORDER ON SUFFOLK UNIVERSITY'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. NO. 37)

November 17, 2026

SOROKIN, J.

David Scher, representing himself, brings this lawsuit against Suffolk University because its law school withheld his diploma, continued his enrollment status, and denied his petition for readmission.[1] Doc. No. 1-1.[2] Suffolk has moved for judgment on the pleadings. Doc. No. 37. For the following reasons, Suffolk's motion is ALLOWED.

## I. BACKGROUND[3]

In or around June of 2010, Suffolk accepted Scher to its Juris Doctorate Degree Program, and Scher enrolled shortly thereafter. Doc. No. 1-1 at 9–10. Scher alleges that his relationship with Suffolk was governed by its Student Handbook then in effect ("Handbook"). See id. at 10.

---

[1] Scher initially listed both Suffolk University and Suffolk University Law School as defendants, see Doc. No. 1-1 at 7, but Suffolk University Law School has since been struck as a named defendant, Doc. No. 29.

[2] Citations to "Doc. No. __" reference items appearing on the Court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header.

[3] The Court summarizes the allegations in the pleadings, viewing the facts in the light most favorable to Scher and drawing all reasonable inferences in his favor. See R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006).

In or around March of 2013, Suffolk issued a disciplinary complaint against Scher for an incident involving another law student's laptop. Id. at 10–11. At the same time, the Suffolk University Police Department pursued a criminal complaint. Id. at 11. An informal disciplinary committee at Suffolk subsequently determined that Scher should be dismissed from the law school, and the Dean accepted its recommendation. See id.; Doc. No. 19 at 5. The committee's decision, however, was subject to formal review. Doc. No. 1-1 at 11.

While that review was pending, Suffolk's Dean informed Scher in late April that he could partake in the law school's commencement despite his ongoing disciplinary matter. Id. Scher later learned that Suffolk planned to withhold his diploma. See id. He objected to the Dean in an email on May 19, 2013, asserting that he had completed Suffolk's Degree Requirements, paid his tuition, and was not on leave.[4] Id. Still, he participated in Suffolk's commencement on May 20, 2013. Id. at 7. Scher alleges that Suffolk improperly continued his active enrollment status at the law school after that date despite the Handbook providing no authority enabling Suffolk to do so, or to withhold his diploma, due to a pending disciplinary matter. Id. at 11–12, 15, 18.

Following commencement, Scher decided to defer Suffolk's formal student disciplinary proceedings until his related criminal case was resolved. Id. at 11. In June 2013, Suffolk informed him that he remained an "active student" at the law school because of his pending

[4] Suffolk's Handbook imposes four Degree Requirements. Doc. No. 38-1 at 11. The first three are academic, and there is no dispute that Scher completed them. See Doc. No. 1-1 at 20; Doc. No. 19 at 13. In contrast, the fourth requires that the faculty recommend a candidate for a degree. Doc. No. 38-1 at 11. Scher implicitly concedes that he did not receive such a recommendation in advance of the commencement. See Doc. No. 1-1 at 20 (alleging "the [Suffolk] faculty did not have cause to withhold recommendation to the Trustees for awarding [Scher] a diploma"); cf. Doc. No. 44 at 17 (suggesting faculty recommended Scher for degree but did so without knowing of his ongoing disciplinary matter). The parties thus do not dispute whether Scher had fulfilled the fourth requirement as a matter of fact, only whether he was improperly prevented from fulfilling it. See Doc. No. 1-1 at 15, 20; Doc. No. 19 at 9, 13. The Court need not resolve this legal dispute given the untimeliness of Scher's claims related to it.

disciplinary matter. Id. at 12. Then in July, Suffolk's counsel confirmed Scher's completion of the law school's academic requirements but declined to award him a diploma without a resolution of his disciplinary appeal. Id.

In 2014, Scher was convicted in state court of larceny based on the same conduct that gave rise to his disciplinary charges at Suffolk. See id. at 13; Doc. No. 19 at 7; Doc. No. 44-2 to -5. His sentence included periods of incarceration and probation. Doc. No. 1-1 at 13. Much later, in a letter from February 3, 2017, the contents of which Scher both quotes and paraphrases in his complaint, Suffolk denied Scher's disciplinary appeal and dismissed him from the law school. Id. The letter also explained, in Scher's words, "that a dismissed student had the right to petition the school for readmission under Rule VI" in the Handbook. Id. (citation modified).

Four years later, in February of 2021, Scher contacted Suffolk for information on the readmission process. Id. He submitted an application on April 5, 2021, which included letters from medical professionals describing his mental-health history and efforts at rehabilitation. Id. at 14. A few weeks later, Suffolk's Dean emailed Scher to inform him that she needed to provide a recommendation to Suffolk's faculty concerning his readmission application. Id. Scher quotes the Dean's email in his pleading as follows:

> Before making a recommendation to the faculty concerning your readmission, I would like you to provide additional information. I would like to know whether your past character and fitness issues will preclude you from admission to the bar even if you successfully pass the bar exam. Accordingly, please obtain a letter from the Board of Bar Examiners in whichever state you intend to practice, stating that your past conduct is not an obstacle to bar admission.
>
> I understand that you may not choose to seek admission to the bar or practice as an attorney. However, as an ABA-accredited law school, my office is mindful of ABA Standard 501(b), which states: "A law school must only admit applicants who appear capable of completing school, passing the bar exam, and being admitted to the bar." Accordingly, without additional information about your bar status, I will be unable to provide a positive recommendation to the faculty concerning your readmission.

Id. (citation modified). On July 21, 2021, Scher responded and explained that he had been informed by the New Hampshire Office of Bar Admissions "that as a matter of policy, the New Hampshire Bar would never issue an advisory opinion as to whether any potential future applicant's past conduct will, or will not, be an obstacle to bar admission." Id. at 14–15. Per Scher, Suffolk replied shortly thereafter that his application "was now complete." Id. at 15.

Three months later, on October 27, 2021, Suffolk denied Scher's application. Id. The law school did not explain its decision, stating only that it was final and that Scher could petition again after five years. Id. Scher subsequently contacted the school twice seeking early reconsideration of the denial. Id. His request in June 2024 went unanswered, but his request in September 2024 was denied the next day. Id.

On October 26, 2024, Scher sued Suffolk in a New Hampshire state court. Id. at 7, 34–35. Scher's complaint brings six counts: Breach of Contract (Equitable Relief - Specific Performance), Breach of Contract (Monetary Relief), Breach of Implied Covenant of Good Faith and Fair Dealing, Unconscionability, Unjust Enrichment, and Declaratory Judgment. Id. at 21–27. All arise from Suffolk's withholding of his diploma in 2013, his dismissal from the law school in 2017, and/or the denial of his petition for readmission in 2021.

Suffolk timely removed the case to the United States District Court for the District of New Hampshire. Doc. Nos. 1, 1-2. That District Court, however, found that it lacked personal jurisdiction over Suffolk and, "in the interests of justice," transferred the matter to this Court. Doc. No. 11. Suffolk timely answered Scher's complaint, Doc. No. 19, and then moved for judgment on the pleadings, Doc. Nos. 37, 38. The motion is now ripe. See Doc. Nos. 44, 45. Neither party seeks a hearing, and the Court has determined one is not necessary.

## II. LEGAL STANDARD

The standard of review for a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is essentially the same as that which applies to a motion to dismiss under Rule 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54–55 (1st Cir. 2006). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"[T]he court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." R.G. Fin. Corp., 446 F.3d at 182. The court does not resolve contested facts and "may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point." Id. The court may also consider "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs' claim," and "documents sufficiently referred to in the complaint."[5] Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

Courts liberally construe pleadings authored and filed by self-represented parties.[6] See Boumekpor v. Wal-Mart Stores E., LP, No. 20-1881, 2021 WL 4241264, at *1 (1st Cir. Aug. 19,

---

[5] Suffolk attached an email correspondence to its answer, Doc. No. 19-1, and the Handbook to its memorandum, Doc. No. 38-1. Scher attached four exhibits to his opposition, all of which are Massachusetts public records pertaining to his incarceration and probation. Doc. Nos. 44-2 to -5. The governing legal standards permit the Court to consider these items, and the parties do not suggest otherwise.

[6] This practice of liberal construction arises because most self-represented litigants lack legal training. Though Scher has such training, the Court has nevertheless interpreted his filings more generously than it would have were they prepared by counsel.

2021) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "However, pro se status does not insulate a party from complying with procedural and substantive law." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

## III. DISCUSSION

### A. Counts I, II, and III

Scher's first three causes of action bring claims for breach of contract and breach of the implied covenant of good faith and fair dealing, with Suffolk's Handbook constituting the alleged contract.[7] Doc. No. 1-1 at 21–25. The parties' papers reveal that these claims concern two alleged breaches: (1) Suffolk withholding Scher's diploma and continuing his enrollment after he allegedly completed the Degree Requirements in 2013, and (2) Suffolk processing and denying Scher's readmission application in 2021. See id. at 21–25; Doc. No. 38 at 11; Doc. No. 44 at 14; Doc. No. 45 at 2, 5–6. As to the former, the Court considers whether Scher timely filed his claims. For the latter, the Court examines whether Scher stated a claim upon which relief can be granted. The Court finds that Scher did neither.

#### 1. *Untimeliness*

At the outset, Suffolk argues that Scher's claims regarding the withholding of his diploma in 2013 are untimely.[8] Doc. No. 38 at 8–11 (citing Mass. Gen. Laws ch. 260, § 2). In

---

[7] The Court examines all contract claims concurrently because they derive from the same facts and theories, and they suffer from the same defects. See Doc. No. 1-1 at 21–25.

[8] The Court applies Massachusetts law, as do both parties. See Doc. No. 38 at 8–11; Doc. No. 44 at 8–13, 16; Doc. No. 45 at 2–5; see also Heinrich ex rel. Heinrich v. Sweet, 49 F. Supp. 2d 27, 34 (D. Mass. 1999) (explaining that "choice of law rules of the transferee forum apply" if case is transferred after being filed in improper forum). Though Scher is a New Hampshire resident, Doc. No. 1-1 at 9, all relevant events occurred in Massachusetts, where Suffolk is located. The six-year limitation period governing contract claims in Massachusetts therefore applies—and is twice as long as the period applicable in New Hampshire. See New Eng. Tel. & Tel. Co. v. Gourdeau Constr. Co., 647 N.E.2d 42, 43–46 (Mass. 1995) (employing "functional approach" to identify state with "the more significant relationship"); Coyle v. Battles, 782 A.2d 902, 905 (N.H. 2001) (applying three-year limitation period).

Massachusetts, "[c]laims for breach of contract and breach of implied covenant of good faith and fair dealing must be brought within six years after the cause of action accrues." Patsos v. First Albany Corp., 741 N.E.2d 841, 846 n.6 (Mass. 2001). "The general rule is that a contract action accrues at the time the contract is breached." Berkshire Mut. Ins. Co. v. Burbank, 664 N.E.2d 1188, 1189 (Mass. 1996). But accrual may be delayed "until the time when a plaintiff discovers, or any earlier date when he should reasonably have discovered, that he has been harmed or may have been harmed by the defendant's conduct." SiOnyx, LLC v. Hamamatsu Photonics K.K., 332 F. Supp. 3d 446, 467 (D. Mass. 2018) (citation modified); accord Williams v. Ely, 668 N.E.2d 799, 804 (Mass. 1996).

For purposes of the pending motion, the Court will assume that Scher's contract claims concerning the denial of his diploma and his continued enrollment did not accrue until February 3, 2017, the date of Suffolk's dismissal letter.[9] See Doc. No. 1-1 at 13. Proceeding from there, Scher had to file his claims by February 3, 2023. He did not sue Suffolk until October 26, 2024. The claims that accrued in 2017 were thus untimely unless there is a reason to toll or disregard the governing limitation period.

Scher argues that Suffolk should be equitably estopped from raising a statute-of-limitations defense because it induced his delay by directing him to apply for readmission, which it then denied. Doc. No. 44 at 12–13. Under Massachusetts law, equitable estoppel "require[s] proof that the defendant[] made representations they knew or should have known would induce the plaintiff[] to put off bringing a suit and that the plaintiff[] did in fact delay in reliance on the

[9] This assumption favors Scher, though it does not save these claims. Suffolk advances a strong argument for an accrual date in 2013, when the diploma was withheld and Scher affirmatively indicated he viewed such conduct as "a breach of contract." See Doc. No. 38 at 9–10. Because Scher's claims are untimely even accepting the 2017 accrual date he urges, Doc. No. 44 at 11–12, the Court need not resolve whether the claims accrued earlier.

representations." White v. Peabody Constr. Co., 434 N.E.2d 1015, 1023 (Mass. 1982). "The reliance of the party seeking the benefit of estoppel must have been reasonable." O'Blenes v. Zoning Bd. of Appeals of Lynn, 492 N.E.2d 354, 356 (Mass. 1986).

Here, Scher emphasizes that Suffolk's dismissal letter told him "a dismissed student had the right to petition the school for readmission under Rule VI," but "if the applicant is readmitted," they "may not enroll before 24 calendar months have elapsed since the effective date of dismissal." Doc. No. 1-1 at 13 (citation modified). Even as alleged by Scher, the letter said nothing about Scher's right to file a complaint, let alone discouraged him from doing so or otherwise suggested that pursuing readmission would toll any governing limitations period. Nor did it promise that relief (i.e., his diploma) could be obtained through the readmission process. In fact, the language is explicitly conditional. It merely acknowledged Scher's "right to petition" and cited the Rule governing the process. Id. Nothing before the Court supports an inference that Suffolk in any way—including when it communicated with Scher regarding readmission and his subsequent application—induced him not to bring suit or reasonably suggested to him that he should wait before doing so. Thus, Scher's resort to equitable estoppel as a means of saving his untimely claims fails.

Even if that were not so, there is a further reason not to overlook Scher's delay on this basis. In Massachusetts, "equitable estoppel will not apply if a reasonable time remains within the limitations period for filing the action once the circumstances inducing the delay have ceased." Pagliarini v. Iannaco, 800 N.E.2d 696, 698 (Mass. 2003) (citation modified). Suffolk denied Scher's readmission petition on October 27, 2021. Doc. No. 1-1 at 15. At that time, Scher still had more than a year left (until February 2023) to bring any claims that had accrued in 2017. He did not do so. Instead, he continued to seek readmission, requesting reconsideration

twice despite Suffolk's express notice that he would not be considered again until five years had passed. Id. Scher's futile efforts to revive an administrative process that had concluded do not supply a basis for excusing his untimeliness, particularly where Massachusetts narrowly applies the estoppel principles he seeks to invoke.

Scher also advances arguments aimed at equitably tolling the statute of limitations.[10] See Doc. No. 44 at 8–11, 15–16. None succeed. In Massachusetts, "equitable tolling is to be used sparingly, and the circumstances where tolling is available are exceedingly limited." Halstrom v. Dube, 116 N.E.3d 626, 632 (Mass. 2019) (citation modified). Such circumstances include where the plaintiff was "excusably ignorant" of the deadline or where the defendant "has affirmatively misled the plaintiff." Andrews v. Arkwright Mut. Ins. Co., 673 N.E.2d 40, 41 (Mass. 1996); see also Halstrom, 116 N.E.3d at 632–33 (applying Andrews in context of Mass. Gen. Laws ch. 260, § 2). By itself, "the initiation of an administrative grievance proceeding does not toll a statute of limitations." Marks v. Ross Univ. Sch. of Veterinary Med., Inc., 272 N.E.3d 622, 627 (Mass. App. Ct. 2025); see also Shafnacker v. Raymond James & Assocs., Inc., 683 N.E.2d 662, 728 (Mass. 1997) (denying equitable tolling for filing of arbitration claim).

Scher does not claim ignorance of the deadline. See Doc. No. 44 at 8–11, 16. Any assertion that Suffolk misled him via the dismissal letter fails here for the same reasons it did in the estoppel context just discussed. See id. at 12–13. And his pursuit of readmission and then reconsideration is not grounds for tolling. Instead, Scher looks elsewhere, seeking to excuse his tardy filing by citing limitations he claims arose from his intervening criminal sentence.

[10] Because the Court proceeds from a February 2017 accrual date, it need not determine whether there would be a basis for tolling for any period before that date. See Doc. No. 44 at 15–16 (alleging fraudulent concealment before that date warranted tolling under state law).

Scher emphasizes that he was incarcerated from April to October of 2017, and again from November 2017 to early February 2018. Id. at 9. He argues that he was legally and physically prevented from commencing a lawsuit against Suffolk during those periods. Id. However, he offers no support for this contention, nor could he.[11] See id. People in prison can, and routinely do, pursue judicial remedies while detained. Unsurprisingly, a Massachusetts statute providing for the tolling of limitation periods in certain circumstances does not extend to periods of incarceration. See Mass. Gen. Laws ch. 260, § 7 (establishing tolling for minors and those with mental illness); see also Street v. Vose, 936 F.2d 38, 40–41 & n.4 (1st Cir. 1991) (considering statute's amendment decades ago to eliminate tolling for those "imprisoned" and finding it "not inconsistent with federal policy"). General equitable principles do not support tolling on that basis, either. Moreover, when Scher's second period of incarceration ended in February of 2018, he still had five years remaining in which to file any contract claims that had accrued a year earlier. And even if there were a basis to apply tolling to the duration of his carceral sentence, which totaled less than a year, it still would not render his contract claims timely here because he filed them more than a year and a half late.

Understanding that, Scher also seeks tolling during his period of probation from early February 2018 to late June 2020, noting he was legally prohibited during that time from contacting Suffolk due to a court-imposed no-contact order.[12] Doc. No. 44 at 8. But

[11] Scher cites two cases that are materially different. See Doc. No 44 at 9 (citing Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424 (1965) (considering examples under federal law and tolling where plaintiff had timely filed in state court but his claims were dismissed for improper venue), and Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231 (1959) (permitting equitable principles where respondent had misrepresented deadline for petitioner to file suit)). Neither supports Scher's tolling claim here.

[12] The Court need not account for Scher's first period of probation because it occurred prior to February 2017. See Doc. No. 44 at 8.

Massachusetts equitable principles do not extend this far, either. Scher cites no cases in which a court has applied equitable tolling due to a no-contact order.[13] See id. at 8–10. And his argument in this regard is doubly flawed. First, even if the no-contact order prevented Scher from serving a complaint on Suffolk while he was subject to it, his probation ended more than two years before the limitation period expired. Scher has not explained why his probation prevented him from preparing the lawsuit for timely filing promptly after the conditions he identifies ceased. Second, as a matter of Massachusetts law, the no-contact order did not prevent Scher from suing Suffolk via its counsel in a civil, nonabusive manner. Cf. L.F. v. L.J., 887 N.E.2d 294, 301 (Mass. App. Ct. 2008) ("There is an exception to the 'no contact' order that allows a person who is the subject of a [chapter] 209A order to engage in litigation against the person who obtained the order [so long as they do not] engage in tactics designed to harass, threaten, or embarrass the person who sought the order."). In these circumstances, Scher is not entitled to equitable tolling.[14]

Because Scher has not established that his contract claims concerning the withholding of his diploma or the continuation of his enrollment were timely, or that any equitable principles excuse their untimeliness, Suffolk's motion for judgment on the pleadings is ALLOWED as to those claims.

---

[13] Again, Scher cites cases that do not support his argument. See Doc. No. 44 at 8–10 (citing Burnett and Glus again, along with Doe v. Creighton, 786 N.E.2d 1211 (Mass. 2003) (examining application of tolling for period before plaintiff realized defendant caused her sexual abuse)).

[14] One final note. Scher also appears to argue that tolling is warranted during his periods of incarceration and probation because they were "caused or set in motion by Suffolk's own conduct" (i.e., its disciplinary proceedings). Doc. No. 44 at 10. This is baseless. Scher's criminal sentence was imposed by a state-court judge in connection with a state-court conviction in proceedings distinct from whatever disciplinary action Suffolk undertook. Nothing before the Court remotely supports an inference that Suffolk misled the state court or used the criminal charges to mislead Scher or impede his timely filing of civil claims. And it remains the case that Scher had more than two years to file when all was said and done with his criminal case.

2. *Failure to State a Claim*

That leaves Scher's contract claims arising from Suffolk's processing of his application for readmission. As to this theory, Suffolk alleges Scher fails to state a claim. Doc. No. 38 at 11–13. A plaintiff's complaint must "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). While "detailed factual allegations" are not necessary, a complaint needs more than "threadbare recitals of the elements of a cause of action," "labels and conclusions," or "naked assertions devoid of further factual enhancement." Id. (citation modified).

"Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013) (citing Singarella v. City of Boston, 173 N.E.2d 290, 291 (Mass. 1961)). "Such an agreement may be memorialized in a student handbook."[15] G. v. Fay Sch., 931 F.3d 1, 12 (1st Cir. 2019) (applying Massachusetts law). "To determine whether select terms of a student handbook are contractually enforceable, Massachusetts courts employ the standard of reasonable expectation, that is, what meaning the party making the manifestation should reasonably expect the other party to give the terms." Id. (citation modified).

Suffolk argues that Scher has failed to allege "a specific promise or obligation" it breached in processing his readmission application. Doc. No. 38 at 12–13. Scher alleges Suffolk breached its "contractual obligations" in three ways: first, "by effectively forcing [him]

---

[15] Suffolk has submitted its Handbook in effect for the 2012–2013 school year. Doc. No. 38 at 4 n.4; Doc. No. 38-1. Scher relied on its content in opposing Suffolk's motion. See, e.g., Doc. No. 44 at 15. Following the parties' lead, the Court assumes that the version of the Handbook in the record establishes the relevant contract between the parties.

. . . to [p]etition [Suffolk] for readmission to the Juris Doctorate Program when there were no academic requirements for [him] to satisfy"; second, "by responding to [his] [p]etition for readmission by requiring him to provide verification from the [Office of Bar Admissions] that he could be admitted as an attorney, knowing . . . that in no jurisdiction does the [Office of Bar Admissions] provide advisory opinions of this nature"; and third, "by unreasonably, arbitrarily and capriciously denying his [p]etition for readmission after effectively forcing him to engage in an administrative process . . . nearly a decade after he had completed the published Degree Requirements . . . and not reasonably or fairly weighing a number of compelling mitigating circumstances relevant to [his] prior conduct." Doc. No. 1-1 at 22–23.

None of these theories find support in the text of the Handbook. Rule VI, concerning readmission after dismissal from the law school, states:

> A student . . . who has been previously dismissed for administrative or disciplinary reasons must submit a petition seeking readmission in order to reenter the law school. Such petitions will be considered by the Faculty Academic Standing Committee. In the case of a student dismissed for disciplinary reasons, the Academic Standing Committee will make a recommendation to the faculty, which will determine whether to readmit the student. A student who is readmitted to the law school after having withdrawn or having been dismissed for administrative or disciplinary reasons is subject to the academic requirements and regulations in force upon reentry.
>
> . . . .
>
> If a student was previously dismissed for administrative or disciplinary reasons, the former student may not submit a petition for readmission sooner than 12 calendar months from the effective date of dismissal. If the applicant is readmitted, the applicant may not enroll before 24 calendar months have elapsed since the effective date of dismissal. The Administrative Committee shall indicate the "effective date of dismissal."
>
> . . . .
>
> If a student, previously dismissed for an academic, administrative or disciplinary reason, is denied readmission by the Academic Standing Committee or the Faculty (in the case of a dismissal for disciplinary reasons), the denial is final and unappealable. A subsequent petition for readmission may not be submitted.

Doc. No. 38-1 at 30–33.

This was Suffolk's policy as it applied to Scher and any other student dismissed for disciplinary reasons. From its plain language, a student in Scher's position could have reasonably expected that, were he dismissed for disciplinary reasons, he would be permitted to petition Suffolk and seek permission to re-enroll. If he did so, he could have expected the Academic Standing Committee to make a recommendation and the faculty to make a decision after fair consideration of his reapplication materials. And he could have expected that the timing conditions specified in Rule VI would apply. Nothing in the quoted language above specifies or limits what information Suffolk might request or consider in connection with a petition for readmission. And, of course, common sense suggests that the necessary information might vary greatly depending on the facts and circumstances presented by each applicant and the reasons for their prior dismissal.

Suffolk's notice to Scher of his right to apply for readmission and his effective dismissal date facially complied with this Rule. See Doc. No. 1-1 at 13. Scher chose to seek readmission, invoking the process just described. Id. at 14. Though the Dean's email included a request not mentioned in the Rule—an assurance from the New Hampshire bar—the request bore an obvious relationship to the decision at hand and was expressly tied to the necessary faculty recommendation. See id. Nothing about this request plausibly suggests a direct or implicit breach of the Handbook's Rule concerning readmission.

Even without having fulfilled the request, Scher's application was deemed "complete" once he explained his unsuccessful effort to secure the opinion the Dean had described. Id. at 14–15. That Scher was denied readmission three months later does not support a plausible breach claim. Suffolk made no promise in the Handbook that a student who submitted a petition

would be guaranteed a particular result. Rather, the Handbook describes a process, and the pleadings—even viewed through the plaintiff-friendly lens applicable here—cannot support an inference that Suffolk deviated from that process in Scher's case.[16] In these circumstances, Scher fails to state a claim for breach of contract arising from the readmission process.

Scher alternatively resorts to the contract's implied covenant of good faith and fair dealing. "Under Massachusetts law, the covenant of good faith and fair dealing is implied in every contract." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005) (citation modified). The implied covenant "provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991) (citation modified). It "may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." Uno Rests., Inc. v. Bos. Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004). "A plaintiff must show a lack of good faith and is not required to show that the defendant acted in bad faith." Id. at 964 n.5.

Scher argues that Suffolk breached the covenant because its request for a letter attesting to his future bar admission placed an "an impossible condition" on his application. Doc. No. 44 at 14–15. As noted, Scher had a right to expect fair consideration of his application in light of the process set out in Rule VI. Scher does not plausibly allege Suffolk destroyed or frustrated

[16] Although Suffolk offered no explanation for its decision, the Rule does not promise one. The only apparent deviation here from the language of Rule VI was Suffolk's statement to Scher that he could reapply after five years' time. See Doc. No. 1-1 at 15. Given the Rule's language foreclosing any "subsequent petition for readmission," Doc. No. 38-1 at 33, this departure from the process was favorable to Scher and cannot support a breach claim.

that right. Rather, the Dean requested information she deemed relevant to making her faculty recommendation—and, in doing so, she explained to Scher why the information mattered. Doc. No. 1-1 at 14. Though Scher's application for readmission presumably would have been bolstered if he had been able to obtain the assurance the Dean requested, his inability to provide it did not result in his petition being immediately and summarily rejected. See id. at 14–15. Moreover, in lieu of the letter the Dean identified, Scher could have submitted other evidence to Suffolk addressing the concern she raised, such as examples of other persons admitted to the New Hampshire bar (or to any other state's bar) after a criminal conviction. Though Scher claims that Suffolk knew or should have known that no bar-admission entity would have met the request, he provides no supporting factual allegations to make such an assertion plausible—that is, he does not allege or show that no state's bar-admission entity would ever provide such a letter, nor does he allege or show that the Dean of his Massachusetts law school should have been aware of the New Hampshire entity's policy.[17] See id. at 23.

Other facts established by the pleadings further underscore the implausibility of this implied-contract claim. Though Rule VI does not provide for a second chance at readmission, Suffolk offered Scher the opportunity to reapply after five years. And, when Scher reiterated a request for reconsideration in September of 2024, before five years had elapsed, his request was entertained by the Dean, who "consulted with his colleagues" before declining to reconsider Scher early. Id. at 15 (citation modified).

Looking beyond Rule VI, Scher argues that Suffolk breached the implied covenant by arbitrarily and capriciously applying a readmission process to him even though he had completed

---

[17] To the extent Scher does make any allegations, they are conclusory and not rendered plausible by anything else before the Court. See Doc. No. 1-1 at 23; Doc. No. 44 at 14–15.

Suffolk's academic requirements. Doc. No. 44 at 15. But nothing in the Handbook would lead a person in Scher's position to expect that Rule VI would not apply to them. Suffolk dismissed Scher from the law school for disciplinary reasons. Doc. No. 1-1 at 11, 13; Doc. No. 19 at 5. Rule VI of Suffolk's Handbook provides students "previously dismissed for . . . disciplinary reasons" an opportunity to petition for readmission—without distinguishing among students who had completed all, some, or none of the Degree Requirements before their dismissal. Doc. No. 38-1 at 30. Put simply, Rule VI facially applied to Scher, and Suffolk's application of it here does not suggest a lack of good faith.

Finally, Scher argues in cursory fashion that Suffolk breached the implied covenant by denying his application in spite of his mitigating evidence. Doc. No. 44 at 15; see Doc. No. 1-1 at 23 (describing his mental-health history, rehabilitation, and therapy); see also id. at 14 (describing letters from medical professionals explaining his prior mental-health circumstances and attesting to his efforts at therapy and rehabilitation). But, again, the Handbook did not guarantee readmission or promise a particular result in any set of circumstances. Likewise, it did not require Suffolk to assign any specific weight to the categories of information Scher provided. That Scher disagrees with Suffolk's decision does not plausibly suggest arbitrariness. Where Scher has not plausibly alleged that Suffolk refused to accept or consider the evidence he supplied, he has failed to state an implied-contract claim arising from the mitigating information he submitted alongside his application for readmission.

In sum, the Court finds that Scher's allegations concerning his readmission application fail to state a contract claim under any theory. As a result, and given the untimeliness of Scher's other contract claims, Suffolk's motion for judgment on the pleadings is ALLOWED as to Counts I, II, and III in their entirety.

B. Remaining Counts

Count IV brings a claim for unconscionability under New Hampshire law. Doc. No. 1-1 at 25. Scher concedes to the dismissal of this claim. Doc. No. 44 at 17.

Count V brings a claim for unjust enrichment arising from Suffolk's retention of Scher's tuition payments. Doc. No. 1-1 at 26. However, "a party with an adequate remedy at law cannot claim unjust enrichment." Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017) (applying Massachusetts law). Although the Court has found that Scher has not stated a plausible breach of contract claim, "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." Id. Because Scher's relationship with Suffolk was governed by a contract, he had an adequate legal remedy and cannot claim unjust enrichment. Even if it were otherwise, "[a] six-year statute of limitations also applies to unjust enrichment claims based on the same underlying facts." Micromuse, Inc. v. Mircomuse, PLC., 304 F. Supp. 2d 202, 209 (D. Mass. 2004). Thus, Count V would be time-barred in any event.

Count VI brings a claim for declaratory judgment arising from the same alleged theories and breaches already discussed. Doc. No. 1-1 at 26–27. It therefore fails for the same reasons Counts I through III did. See John Beaudette, Inc. v. Sentry Ins. A Mut. Co., 94 F. Supp. 2d 77, 98–99 (D. Mass. 1999) (finding contract-related declaratory judgment claims untimely under same six-year statute of limitations); Berkshire Mut. Ins. Co., 664 N.E.2d at 1189 (applying Massachusetts six-year statute of limitations for breach of contract claims to declaratory judgment action regarding insurance policy); Reese v. Progressive Direct Ins. Co., No. 22-cv-10539-ADB, 2023 WL 1929854, at *5 (D. Mass. Feb. 10, 2023) (dismissing declaratory judgment claim per Massachusetts law because plaintiff's "underlying claims [did] not state a claim upon which relief [could] be granted"), aff'd No. 23-1200, 2024 WL 1025029 (1st Cir. Feb. 9, 2024).

Accordingly, Suffolk is entitled to judgment on the pleadings as to the remaining claims in Scher's complaint.[18]

## IV. CONCLUSION

For the foregoing reasons, Suffolk's Motion for Judgment on the Pleadings (Doc. No. 37) is ALLOWED. A separate judgment will issue, with each party to bear their own fees and costs.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

[18] Scher advances two other arguments in an effort to resist entry of judgment. He urges that the parties' disagreement about whether he completed the Degree Requirements warrants discovery. Doc. No. 44 at 7–8, 17. But the resolution of this dispute cannot render Scher's contract claims timely or plausibly stated, for reasons the Court has already explained. Scher also objects to Suffolk's assertion in its answer of a charitable-immunity defense. Id. at 18. The Court need not evaluate that defense, though, given its determination that Scher's claims are either time barred or not plausibly alleged.